WILLIAM JUDGE vs. CITY OF MERIDEN.

Surveyors of highways appointed by towns, and street commissioners appointed by cities, are when repairing defective highways in the performance of a public duty, and the rule *respondeat superior* does not apply to those corporations in respect to such acts of such officers.

The defendant, a municipal corporation, by raising the grade of certain of its streets, without providing suitable sluice-ways for the escape of the surface water, caused an accumulation of water on a street near the premises occupied by the plaintiff. The street commissioner of the defendant, in the exercise of his official functions, for the purpose of relieving the street of the accumulation of water, opened a passage through an intervening cross-walk, and thereby diverted a large quantity of water into the plaintiff's premises, and damaged his property. Held that the defendant was not responsible.

TRESPASS ON THE CASE; brought to the Superior Court in New Haven county, and tried before *Phelps, J.*

The defendant was incorporated in 1867, and accepted the provisions of its charter, and has since that time, by its properly constituted authorities, acted under and in pursuance of its charter and of certain by-laws and ordinances authorized by and enacted under it.

The plaintiff, on the 10th of March, 1869, was the legal occupant of an apartment in a building situated on the westerly side of Pratt street, about seventy-five feet northerly from its intersection with Main street.

The location of a part of Main and Pratt, and of several contiguous streets, is on the site of what was formerly a meadow or marsh, liable to inundation by Harbor brook at all times of heavy rains and high freshets, and such inundation, to a greater or less extent, was not uncommon prior to the incorporation of the defendant.

Under a vote of its common council passed October 14th, 1867, directing the alteration of the grade of Main street and the regulation of sidewalks thereon, and in pursuance of its general authority over the subject under its charter and by-laws, the defendant between that time and the 10th of March, 1869, raised said street at the point of its intersection with Pratt street, and for a considerable distance both easterly and

westerly therefrom, about three feet, and also so far raised Pratt street at said point of intersection, and northerly therefrom past the premises of the plaintiff, as to make the grade properly correspond with that of Main street; and in connection with such alteration in the grade of Main street, constructed sidewalks, cross-walks and gutters with openings into sewers to carry off the surface water from that street. This vote was passed and the work under it done to improve said street, and the alteration in the grade of the same was an essential improvement thereto for all the purposes of public use, except so far as, without providing an equivalent therefor, it prevented the proper discharge of the surface water, which in times of heavy rains came from Veteran street, in its previously accustomed flow across Main street.

Among the officers the appointment of whom is provided for in the defendant's charter and by-laws, are a committee of the common council on streets, and a street commissioner, whose duties are severally therein prescribed.

The sewers by which Main street is drained are adapted only to the surface drainage of the street, and are designed to meet the demands of a water-shed of about ten acres, and are, with the openings into them from the gutters, in ordinary rains of sufficient capacity to discharge their legitimate duty to that street, but in extraordinary spring rains when the surface of the ground is frozen they are inadequate.

Veteran street coming from the south intersects Main street at nearly a right angle. The gutters of this street are the channels for the drainage of a water-shed of about one hundred and fifty acres, and in ordinary seasons a small living stream flows through them. Prior to the incorporation of the defendant, and under the management of the selectmen of the town of Meriden, the escape of water from this shed was through a stone sluice passing under Main street to private property on the opposite side, and the owner of that property laid a cement pipe from the northerly terminus of said sluice across his premises to Pratt street, under which was a drain leading to an open ditch in the field beyond. This cement pipe was of considerable less capacity than the stone sluice.

Said sluice and pipe were generally sufficient to properly discharge all the water which came by way of Veteran street, unless they became obstructed by debris floating into them, but there have been occasions when the crossing of Veteran street at its junction with Main has been flooded in consequence of the incapacity or obstruction of said sluice and pipe. On all such occasions prior to the alteration by the defendant of the grade of Main street, the surplus water could and did without injury pass off by flowing across Main street, but this was prevented by such alteration, and no equivalent provision for the passage of said surplus water has been substituted by the defendant, without which provision the present sluice and pipe are at times insufficient.

The Main street sewers are not designed to provide for an overflow from Veteran street, and are insufficient for that purpose.

The defendant's sewers discharge into Harbor brook, the surface of which at low water is about six feet below the Main street gutter, and at its highest freshet stages is above the level of the mouths of said sewers, by means of which their delivery at such times is essentially impeded.

The sluice and pipe aforesaid have not at any time been changed by the defendant, and remain as they were at the time of the incorporation of the defendant. When the grade of Main street was changed, they were not examined by the committee on streets or by the street commissioner, though the attention of persons in charge of the work was called by one owning property in that vicinity, to the claim that the raising of the street would stop the flow of surplus water over it, and thereby endanger private property.

Between 4 and 5 o'clock P. M. of the 10th of March, 1869, on account of a heavy rain and the frozen condition of the ground, the surface water accumulated in an extraordinary quantity on Main street, entirely flooding it from a point easterly of the intersection of Pratt street with it, to a point a considerable distance westerly of said intersection, thereby constituting a nuisance and obstruction to Main street. The overflow came from Veteran street, and was occasioned by the

choking of the sluice, at an elbow or angle in it, with pieces of timber and other rubbish which had drifted into its open mouth; and was in such quantity as to cover the curb and sidewalk on the north side of Main street, and run in large quantities into the cellars and basements of buildings there situated.

A cross-walk at the intersection of Pratt with Main street prevented the water so accumulated in Main street from passing into Pratt street. The street commissioner of the defendant, in the exercise of his official functions, but with no authority except what the charter and by-laws and his appointment gave him, for the purpose of relieving such accumulation on Main street, and preventing further injury and damage to property there, opened a passage through the cross-walk, and thereby suddenly and in a negligent manner diverted a large quantity of water into Pratt street. The plaintiff was present and remonstrated with the street commissioner against opening such a passage through the cross-walk, assigning as a reason therefor that it would flood the premises occupied by him; but the commissioner disregarded these remonstrances. Immediately on the opening of the cross-walk, the water, which ran from Main into Pratt street through the opening, passed down the street to the place occupied by the plaintiff, and poured in such an amount into the front entrance of his saloon as to fill it in a few moments to the depth of twelve inches, thereby setting afloat sundry casks and packages of wines and liquors kept by the plaintiff in the saloon for sale, a trunk containing wearing apparel and other articles, and destroying and damaging the same to the amount of $150.

Without the action of the commissioner in removing a portion of the cross-walk, the water would not have entered the plaintiff's premises. His saloon was in the basement of the building, and, after the water had ceased to run into it, he opened his rear door and the greater part of it ran out. He then locked the saloon and left the premises for the night.

In times of uncommon freshets the water of Harbor brook overflows so as to enter the plaintiff's premises from the rear, and at 8 or 9 o'clock of the evening of the 10th of March had

risen to such a point as would cause the water therefrom to stand on the floor of the saloon to the depth of about nine and one-half inches, but, if it so entered, it fell away by the subsidence of said brook during the same night. The water in said brook rose about three feet between 6 and 9 P. M. of that day, in addition to what it had before that time risen, and the freshet was an extraordinary one.·

Some of the members of the street committee, at the time of the change in the grade of Main street, were old residents of the defendant, and had personal knowledge of the occasional overflow at the foot of Veteran street, and of the fact that such surplus water was accustomed to pass off over Main street.

On these facts the court rendered judgment for the plaintiff, and the defendant moved for a new trial, and also filed a motion in error, assigning the following reasons, viz :

1.   That upon the record judgment should have been rendered for the defendant instead of the plaintiff.

2.   That the plaintiff's declaration is wholly insufficient in the law, inasmuch as the facts alleged therein, if true, do not in law constitute a good cause of action against the defendant.·

· 3.   That the duty of the defendant touching all the matters set forth in the plaintiff's declaration and in the finding of the court, is wholly a public duty imposed by the legislature solely for public purposes, and not granted for any purpose of private profit or advantage, or as a privilege to the defendant, and that, for any neglect or violation of such duty by itself or its agent, it is not liable to an action except when such action is expressly given by the legislature.

4.   That the defendant was under no obligation to provide, as against the plaintiff, either surface drainage or sewers, or to protect the plaintiff against injury from want or insufficiency of either, or from change in the grade of Main street.

5.   That the street commissioner, who is found by the court to have opened the cross-walk and diverted the water which was flooding Main street into Pratt street, was not in such act, nor at all, the agent or servant of the defendant, but was the agent and servant of the public, and that for his acts the defendant is not liable.

6. That it was not the duty of the defendant to protect the plaintiff against flooding, consequent either upon extraordinary rains and freshets, or upon the casual and providential obstruction of a drain pipe on private property, over which the defendant had no control or power.

7. That the sluice-way and drain pipe leading from Veteran street were not under the control of the defendant, but were wholly under the control of the town of Meriden and private parties, and that the defendant did not owe to the plaintiff or to the public any duty in reference to said sluice-way and drain pipe, but that it was the duty of said town and of said private parties to have and keep said sluice-way and drain pipe in proper condition, as a living stream flows through the same.

8. That the act of the street commissioner, in opening said cross-walk and making a passage through the same, was wholly unauthorized by the defendant, and wholly outside the duties of the commissioner as defined by said charter and by-laws.

9. That the plaintiff had and kept his said wines and liquors—the same being almost all the property claimed by him to have been injured by said flooding—for the unlawful purpose of selling the same contrary to the laws of this state, and that for injury to or destruction of such property so kept no action will lie.

*Watrous* and *Lounsbury*, with whom was *Hicks*, in support of the motions.

*O. H. Platt* and *Fay*, contra.

FOSTER, J. The injury of which the plaintiff complains was occasioned by an overflow of water from the street, upon the floor of the shop or saloon occupied by him for the sale of beer, wine and liquors.

In the first count of the declaration the plaintiff alleges that the streets and highways of the city became flooded with water from rains, and for want of suitable drains, gutters, and

sluiceways, which the defendants were bound to provide, said water flowed into and upon the premises of the plaintiff. The second count of the declaration sets forth that the defendants had provided, as it was their duty to do, sufficient sluices, drains, gutters, &c. upon and along Main street in said city; that the same were in proper condition at the time of the injury complained of, and they might and would have taken off all surface water in said street, safely, without damage, had they been suffered to do so; but the defendants, intending to injure and prejudice the plaintiff, did withhold and prevent said water from so passing off, as aforesaid, and did divert and turn large quantities of water from said Main street into Pratt street, on which the premises of the plaintiff were situate, and so overflowed the saloon of the plaintiff.

The gravamen of the first count is an injury to the plaintiff chargeable to the negligence and unskilfulness of the defendants in the construction of the streets and highways of the city, and the incomplete condition in which they were allowed to remain. The gravamen of the second count is an injury charged, apparently, to the wanton and malicious, at all events, to the unnecessary and injudicious, acts of the defendants in obstructing the flow of the water through Main street, and turning it into and upon the plaintiff's premises in Pratt street.

From the finding of the court below it appears that on the 10th of March, 1869, in consequence of a heavy rain, there was a large and extraordinary accumulation of water in Main street, interrupting the travel and endangering property. To relieve this accumulation of water, the street commissioner opened a cross-walk at the intersection of Main and Pratt streets, and the water in passing down Pratt street flowed into the premises of the plaintiff. This act of the street commissioner was the cause of the plaintiff's injury, for the case finds that without that action said water would not have entered the plaintiff's premises. The only question therefore which it is necessary to decide is are the defendants liable for this act of the street commissioner?

In our opinion the defendants are not liable. If the act of

the street commissioner in opening the cross-walk between Main and Pratt streets is to be regarded as a wanton and malicious act, committed for the purpose of injuring the plaintiff, and it is so charged, the defendants are not liable—it was not their act. It would be gross injustice to hold the inhabitants of a municipality liable for a malicious trespass, because committed by a man who happened to hold an office which that municipality was by law required to fill. If, on the other hand, the street commissioner was acting on his judgment, as to what had best be done in an emergency to remove the nuisance from Main street, even if his action was hasty, or negligent, or injudicious, his powers were not such, the relations between him and the city were not such, as to make the defendants responsible for his act. The principle of *respondeat superior* is not applicable, and the defendants are not liable.

There is error in the judgment below.

In this opinion PARK, CARPENTER, and SEYMOUR, Js. concurred.

BUTLER, C. J. I admit that surveyors of highways appointed by towns, and street commissioners appointed by cities, when repairing defective highways are in the performance of a public duty, and that the rule *respondeat superior* does not apply to those corporations in respect to such acts of such officers. I admit also, that, at the time in question, the accumulation of water in Main street was a defect in a highway, and that the act of the street commissioner in opening the cross-walk to permit the accumulated water to flow off through Pratt street into the brook, was a necessary act of reparation to prevent greater mischief to a greater number. So far forth I concur in the opinion of the court.

But there is another point in the case which I cannot permit to pass without notice. I think it is the point upon which the court below decided the case.

It appears that the defendant corporation, by order of their common council, raised the grade of Main street at the intersection of Veteran street, so that sudden and extraordinary

collections of water, which were accustomed to escape over that highway at that place, and across the adjoining lands to the brook from said Veteran street, were turned down upon Main street, and, there being no adequate sluice-ways provided for its escape through the elevated way, or from Main street below it, accumulated upon Main street, and that such a diverted flow occasioned the defect in Main street, which the street commissioner at the time in question attempted to remove. There was a sluice-way in Main street, where it was raised, connecting with pipes sufficient to carry off the ordinary flow of water from Veteran street, which appears from the finding of facts to have been partially and accidentally obstructed at the time in question. Perhaps the court are right in holding that the defendants are not responsible for the accidental obstruction of the sluice-ways and pipes, and that it does not clearly appear from the finding that, but for that obstruction, there would have been an accumulation in Main street at the time, and therefore the point is not properly raised, and need not be noticed in the case. But I am inclined upon reflection to think otherwise, and to hold that, if the court found that the defect in Main street, which the commissioner attempted to remove, was occasioned by the wrongful elevation of Main street, without a suitable provision for the passage of water so as to protect it from excessive overflows from Veteran street, the corporation was directly responsible for the defect occasioned by such overflow, and the court was right in holding them liable for the consequences which naturally and necessarily resulted from the removal.